IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

ALFREDO M. BUSTAMANTE, §
 §
Plaintiff, §
 §
v. § NO. EP-16-CV-207-MAT
 §
NANCY A. BERRYHILL,[1] §
ACTING COMMISSIONER OF THE §
SOCIAL SECURITY ADMINISTRATION, §
 §
Defendant. §

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Alfredo M. Bustamante ("Bustamante") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **REVERSED** and the action **REMANDED**.

### I. PROCEDURAL HISTORY

Bustamante was sixty-four years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (R. 34, 160).[2] His job experience included working as a machine feeder, a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this case.

[2] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

1

machine packer (box maker), and a janitor.[3] (R. 54–55). Bustamante filed an application for DIB on November 19, 2013. (R. 75). He alleged disability beginning on April 9, 2009, due to shoulder problems, back problems, vision impairment, and joint pain in the left foot. (R. 190–91). After his applications were denied initially and upon reconsideration, Bustamante requested a hearing. (R. 86–89, 92–94, 97).

On July 27, 2015, a hearing was conducted before the ALJ. (R. 34–68). At the hearing, Bustamante moved to amend his disability onset date to May 24, 2012. (R. 64–65, 182). On September 1, 2015, the ALJ issued a written decision, granting the motion to amend the alleged onset date and denying benefits on the ground that Bustamante was capable of performing his past relevant work as a machine feeder, a machine packer (box maker), and a janitor. (R. 20–29). On May 5, 2016, the Appeals Council denied Bustamante's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–9).

In his written decision, the ALJ found that Bustamante had the following severe impairments: loss of central visual acuity of right eye only, right shoulder rotator cuff tear status-post repair, and left foot degenerative joint disease. (R. 22). However, the ALJ also found that these impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23). The ALJ determined that Bustamante had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except [he is limited to][4]

---

[3] At the hearing, the vocational expert equated Bustamante's job as "assistant" to a "machine feeder," which, in this case, was described as a person who would feed cardboard into a machine to make boxes. (R. 50–51, 54). The vocational expert also equated Bustamante's job as a "machine operator" to "machine packer (box maker)," which, in this case, was described as a person who would ensure the machine turned the cardboard into boxes. (R. 50–51, 54–55).

[4] The language "he is limited to" is not included in the RFC as written in the ALJ's decision. (R. 23). However, the Court assumes this language was intended to be included based on the relevant portion of the hypothetical that the ALJ posed to the vocational expert at the hearing: "The hypothetical individual is limited to frequent postural

frequent balancing, stooping, kneeling, crouching, and crawling; frequent climbing of ramps and stairs, but no climbing ladders, ropes, or scaffolds; occasional left foot control operation; never engage in right side overhead reaching; and he is limited to monocular vision.

(R. 23). Bustamante argues that the ALJ erred: (1) in his analysis of the opinions of Bustamante's treating physicians; (2) in his finding relating to Bustamante's credibility; and (3) in finding that Bustamante could return to his past relevant work. (Pl.'s Br., ECF No. 21, at 6).

## II. DISCUSSION

A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citations omitted). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation

---

movements, which includes balancing, stooping, kneeling, crouching, crawling, climbing of ramps and stairs." (R. 62). Further, Bustamante appears to agree with this reading of the RFC. (*See* Pl.'s Br., ECF No. 21, at 2).

omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.*

B. THE ALJ ERRED IN HIS ANALYSIS OF THE OPINIONS OF THE TREATING PHYSICIANS AND SUCH ERROR IS NOT HARMLESS

Bustamante argues that the ALJ erred by failing to perform the required analysis of the opinions of his two treating physicians and by failing to provide good reasons for not adopting the treating physicians' opinions, as required under 20 C.F.R. § 404.1527. (Pl.'s Br., ECF No. 21, at 10–11). Specifically, Bustamante asserts that the ALJ did not consider the preference for treating source opinions nor the consistencies between the opinions of his two treating sources, did not consider that one of his treating sources was a specialist, and did not consider whether his treating sources had "reasonable knowledge" of his impairments. *Id.* at 13. Bustamante also asserts that the longitudinal medical record supports the treating sources' opinions and that the ALJ incorrectly gave greater weight to the opinion of a state agency examiner that was provided before Bustamante's right shoulder surgery and left foot injury. *Id.* at 13–15. Bustamante contends that if the ALJ had given greater weight to the opinions of his treating physicians, his RFC would have included greater limitations, which would have resulted in a determination that he was disabled. *Id.* at 12.

The record reflects that two treating sources provided medical opinions on Bustamante's ability to do physical activities: Michael Todd, M.D., Bustamante's treating orthopedic surgeon, and Jorge Guzman, M.D., Bustamante's treating physician.

Dr. Guzman treated Bustamante from April 2012, to February 2013, for complaints of,

*inter alia*, upper back pain and right shoulder pain. (R. 242–53, 366). On June 21, 2012, Dr. Guzman noted a "[f]ull thickness rotator cuff tear of the supraspinatus anterior fibers superimposed on rotator cuff tendinopathy" and referred Bustamante to "orthopedics." (R. 242–44). On June 5, 2014, Dr. Guzman completed a physical activities questionnaire, noting that he had seen Bustamante at five visits between April 26, 2012, and February 1, 2013. (R. 362–64). Dr. Guzman opined that Bustamante could stand for two hours at a time and could stand or walk about four hours total in an eight hour working day. (R. 362). He also opined that Bustamante could lift 10 or less pounds occasionally, but never 20 or 50 pounds. (R. 363). Dr. Guzman further opined that Bustamante had significant limitations doing repetitive reaching, handling, or fingering.[5] *Id.* Dr. Guzman also opined that Bustamante's impairments would likely produce good days and bad days and that they would cause Bustamante to be absent from work about twice a month. (R. 364).

In assigning little weight to the medical opinions of Dr. Guzman on Bustamante's physical limitations, the ALJ explained that Dr. Guzman had not treated Bustamante since February 2013 and that the subsequent objective medical evidence does not support such limitations. (R. 28 (citing R. 308–11, 315–16, 325–27 (2014 medical records))).[6]

Dr. Todd began treating Bustamante in January 2013, and performed surgery on Bustamante on January 24, 2013, to repair a tear to Bustamante's rotator cuff in his right

---

[5] Dr. Guzman also answered what percentage of time Bustamante could use his arms to reach, including overhead. (R. 363). It appears that Dr. Guzman indicated either "no"% or 50% for the right arm, and 50% for the left arm. *See id.* However, his notations are not clear enough for the Court to state conclusively. At the very least, both notations appear to indicate less than 100%.

[6] Dr. Guzman also completed a mental impairments questionnaire, opining that Bustamante had no mental impairments. (R. 351–53). The ALJ gave great weight to these opinions because they were consistent with the record as a whole. (R. 27). Bustamante raises no issue with the ALJ's consideration of these opinions, except to note the "inconsistency in the ALJ's reasoning" when determining the weight to give Dr. Guzman's opinions on Bustamante's mental versus physical limitations. (Pl.'s Br., ECF No. 21, at 14).

5

shoulder. (R. 264–68). Dr. Todd examined Bustamante at several follow up visits through June 19, 2013, and, on March 13, 2013, noted a fracture in Bustamante's left foot. (R. 267–283). On March, 13, 2013, Dr. Todd completed a physical activities questionnaire in which he opined that Bustamante could sit for more than two hours at a time, stand for twenty minutes at a time, and stand/walk for four hours total in an eight hour workday. (R. 292). Dr. Todd also opined that Bustamante would need to take unscheduled breaks every two to three hours and rest for about fifteen minutes before returning to work. (R. 292–93). Dr. Todd opined that it was too early to determine how many pounds Bustamante could safely lift and carry because he was only six weeks out from surgery. (R. 293). However, Dr. Todd opined that Bustamante had significant limitations in doing repetitive reaching, handling, or fingering, and could not use his right arm to reach, including overhead reaching, during an eight hour working day. *Id.*

The ALJ explained that he gave little weight to the opinions of Dr. Todd "because they were inconsistent with the longitudinal objective medical evidence[7] showing drastic improvement in right shoulder functioning" and because they were "reflective of [Bustamante's] functioning 6-weeks post shoulder surgery." (R. 27). The ALJ cited the medical records for all but the last of Dr. Todd's subsequent examinations in support of his conclusion that the objective medical evidence shows drastic improvement in right shoulder functioning. *Id.* (citing R. 270–79).

Pursuant to 20 C.F.R. § 404.1527(c)(2), when a treating source's medical opinion is not given controlling weight, the ALJ considers several factors in determining the weight to give the medical opinion and provides good reasons for assigning such weight. The factors to consider under this circumstance include: (1) the length of the treatment relationship and the frequency of

---

[7] Longitudinal medical records may show the claimant's history of complaints, attempts at relief, treatment, and the course of treatment, or lack thereof. *See* SSR 96-7p, 1996 WL 374186, at *6–7 (July 2, 1996).

examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion through the presentation of relevant evidence in support, such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) whether the source of the opinion is a specialist; and (6) any other factors which tend to support or contradict the medical opinion. *Id.* at § 404.1527(c)(2)–(6). "An ALJ may not reject a medical opinion without an explanation and must show good cause for doing so." *Butler v. Barnhart*, 99 F. App'x 559, 560 (5th Cir. 2004) (citing *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Myers*, 238 F.3d at 621).

The ALJ's explanation of the weight he gave Dr. Guzman's opinions relating to Bustamante's physical limitations, while brief, sufficiently reflect consideration of the relevant factors. Dr. Guzman was not a specialist, and the ALJ considered the timing of his treatment relative to the date of his medical opinions and weighed it against the objective medical evidence. Accordingly, the Court finds no error in the ALJ's consideration of these opinions.

However, considering the opinions of Dr. Todd, the ALJ's explanation does not demonstrate that he considered all of the relevant factors, pursuant to 20 C.F.R. § 404.1527(c). The reasons provided show only that the ALJ considered Dr. Todd's opinions related to Bustamante's shoulder functioning and cited only a portion of the medical records when stating that the opinions were inconsistent with the longitudinal objective medical evidence. By failing to reference or include Dr. Todd's other opinions, the ALJ essentially rejected them without explanation, which was in error. *See Butler*, 99 F. App'x at 560. Moreover, considering the incomplete longitudinal medical record cited in support of the ALJ's reasons to give little weight to Dr. Todd's opinions on Bustamante's shoulder functioning, the Court finds that the ALJ erred in his analysis of the factors in 20 C.F.R. § 404.1257(c).

7

Having concluded that the ALJ erred in his analysis and explanation of the weight he gave to Dr. Todd's opinions, the Court must determine whether this error was harmless. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)). "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (internal quotation marks omitted)). On examination of the record, as detailed below, the ALJ's errors are not harmless because a more complete analysis of the relevant factors may have resulted in providing greater weight to Dr. Todd's opinions, and potentially, as a result, to Dr. Guzman's opinions. This, in turn, may have resulted in an RFC finding reflecting greater physical limitations and a finding of disability.

First, although the ALJ described "drastic improvement in right shoulder functioning," the objective medical evidence cited by the ALJ does not support this description. Objective medical evidence includes evidence of reduced joint motion. *See* 20 C.F.R. § 404.1529(c)(2). The range of motion ("ROM") reflected throughout the medical records cited by the ALJ show both increased and decreased ROM in Bustamante's right shoulder.

On February 27, 2013, Dr. Todd noted that Bustamante's ROM in his right shoulder measured flexion[8] at 95 degrees and abduction[9] at 90 degrees. (R. 270–71). On March 26, 2013, Bustamante's right shoulder ROM measured flexion at 120 degrees and abduction at 70 degrees. (R. 275). On April 22, 2013, Bustamante's right shoulder ROM measured decreased flexion at 95 degrees, but increased abduction at 95 degrees. *Id.* On April 24, 2013, Dr. Todd noted that

---

[8] An illustration of "flexion" is provided in the medical evidence and shows the range of motion when the arm is moved frontward from the side of the body, palm down, and stopping when the arm is raised overhead and forms a straight line with the body. (*See* R. 307).

[9] An illustration of "abduction" is provided in the medical evidence and shows the range of motion when the arm is moved away from the body to side and stopping when the arm is raised overhead and forms a straight line with the body. *See id.*

8

Bustamante had 60 degrees of abduction at external rotation. (R. 274). On this date, Dr. Todd noted that Bustamante had a mild loss of motion to abduction/external rotation, (R. 277), and in his assessment Dr. Todd noted that he "will continue the loss of range of motion." (R. 274). On May 24, 2013, Dr. Todd noted that Bustamante's right shoulder "moves through a very good range of motion," "but also that "he does have a recurrent tear I am not identifying it just yet nontender to palpation across the AC joint." (R. 279).

Moreover, medical evidence in the record that was not cited by the ALJ in support of his determination to give little weight to the opinions of Dr. Todd, show that, on August 20, 2012, prior to Bustamante's surgery, his ROM was measured at 120 to 130 degrees flexion, 90 degrees abduction, and 30 degrees abduction at external rotation. (R. 297). On June 19, 2013, while Dr. Todd noted improved ROM, he also instructed Bustamante not to lift in excess of 10 pounds with no overhead work with the right arm. (R. 283). Finally, on January 24, 2014, Nilesh Mehta, M.D., measured Bustamante's right shoulder ROM at 60 degrees flexion and 40 degrees abduction. (R. 307, 309). This ROM was less than the ROM measured by Dr. Todd just before he provided his opinions. Thus, the entire longitudinal record of Bustamante's right shoulder ROM reflects that his ROM increased and decreased at various times. However, as of the last measurement in the record, the ROM of Bustamante's right shoulder was more limited than before his surgery. Based on the ALJ's written decision, the Court cannot tell whether the ALJ considered and did not explain or ignored this medical evidence when deciding that the longitudinal objective medical evidence showed drastic improvement in right shoulder functioning.

Because the ALJ's explanation for discounting Dr. Todd's opinions relies almost exclusively on an incomplete portion of the longitudinal objective medical evidence that does not

9

appear to reflect "drastic" improvement, as outlined above, the Court finds that reconsideration of the complete medical record might lead the ALJ to a more favorable determination of the weight to assign the opinions of Dr. Todd.

Second, the ALJ did not address or explain what weight he gave Dr. Todd's medical opinions concerning Bustamante's functioning ability related to his foot. The ALJ included in his RFC finding that Bustamante was limited to "occasional left foot control operation." (R. 23). Dr. Todd had diagnosed that Bustamante had a closed, nonunion metatarsal base fracture of his third metatarsal, (R. 269, 273), and opined that Bustamante was limited to standing only twenty minutes at a time and limited to standing and walking for about four hours total in an eight-hour workday. (R. 292). This opinion is somewhat in accord with the opinions of Dr. Guzman. (*Compare* R. 292 with R. 362 (both doctors opining that Bustamante is limited to standing or walking about four hours total in an eight hour workday)).

Although 20 C.F.R. § 404.1567(c) defines the ability to do medium work as simply the ability to lift not more than 50 pounds at a time and lifting or carrying up to 25 pounds frequently, social security rulings[10] interpreting that regulation state that "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." *Harper v. Barnhart*, 106 F. App'x 889, 891 (5th Cir. 2004); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Therefore, if the ALJ had provided Dr. Todd's medical opinions greater weight, the RFC assessment may have included limitations for standing and walking, which may have affected the disability determination.

Reconsideration and further explanation of the ALJ's consideration of the treating

---

[10] Although the rulings of the Social Security Administration are not binding on this Court, "they may be consulted when the statute at issue provides little guidance" and may be relied upon in evaluating an ALJ's decision. *Myers*, 238 F.3d at 620 (citations omitted).

source's opinions may also change or support his assessment of Bustamante's credibility and consideration of Bustamante's ability to perform his past relevant work. Accordingly, the Court declines to address these other alleged errors at this time. However, should the ALJ, on reconsideration, determine that the opinions of Drs. Todd and Guzman are still entitled to little weight, the Court urges the ALJ to consider and explain his findings relating to Bustamante's other alleged errors.

### III. CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **REVERSED** and the action **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings.

**SIGNED and ENTERED** this 27th day of September, 2018.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE